UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

RICKY D. R.,

          Plaintiff,

   v.

COMMISSIONER OF SOCIAL SECURITY,

          Defendant.

CASE NO. 3:22-CV-5908-DWC

ORDER REVERSING AND REMANDING DEFENDANT'S DECISION DENYING BENEFITS

Plaintiff filed this action, pursuant to 42 U.S.C. § 405(g), for judicial review of the denial of his application for Supplemental Security Income benefits (SSI). Pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and Local Rule MJR 13, the parties have consented to proceed before the undersigned. After considering the record, the Court concludes that this matter must be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Order.

# I. BACKGROUND

Plaintiff filed an application for Supplemental Security Income benefits (SSI), on February 7, 2019, alleging disability beginning June 9, 2018. Administrative Record (AR) 416-422, 432. After his application was denied initially and upon reconsideration, he filed a written request for a hearing. AR 348-351, 355-357, 358-361. On June 8, 2021 and Administrative Law Judge (ALJ) held a hearing at which Plaintiff was represented and testified. AR 266-290. On July 9, 2021 the ALJ issued a written decision finding Plaintiff not disabled. AR 90-115. The Appeals Council declined Plaintiff's request for review making the ALJ's decision final. AR 1-7.

# II. THE ALJ'S FINDINGS

The ALJ found Plaintiff has the severe impairments of: osteoarthritis of the left hip, morbid obesity, history of asthma, bilateral hand tremors, status post right rotator cuff tear, major depressive disorder, unspecified anxiety disorder with aspects of social anxiety, generalized anxiety and intrusive posttraumatic stress disorder (PTSD), and unspecified personality disorder (cluster B). AR 96.

The ALJ found the combination of Plaintiff's impairments do not meet or equal any Listed Impairment. *Id*.

The ALJ determined that Plaintiff has the residual functional capacity (RFC) to perform light work as defined in 20 CFR § 404.1567(c) except:

> lift 20 pounds occasionally and 10 pounds frequently; stand/walk 6 hours, sit about 6 hours in an 8-hour workday with normal breaks; occasional climbing of ramps or stairs and no climbing of ladders, ropes, or scaffolds; occasional stooping, kneeling, crouching, and crawling; with the right upper extremity, the claimant is limited to occasional overhead reach; the claimant is limited to occasional bilateral fingering; must avoid concentrated exposure to industrial vibration; occasional, concentrated exposure to atmospheric conditions as defined in the Selected Characteristics of Occupations of the DOT; avoid concentrated exposure to workplace hazards such as unprotected heights and operational control of moving machinery; understand and carry out simple instructions consistent with reasoning level one or two; no

contact with the general public and occasional contact with coworkers, and supervisors; limited to a work environment with few changes.

AR 98-99.

The ALJ found that a person of Plaintiff's age, with his education, work experience, and RFC, could perform other jobs that exist in significant numbers in the national economy such as Sorter and Router, and therefore Plaintiff is not disabled. AR 108-109.

### III. STANDARD

Pursuant to 42 U.S.C. § 405(g) this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)). However, the Commissioner's decision must be affirmed if it is supported by substantial evidence and free of harmful legal error. 42 U.S.C. § 405(g); *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

Substantial evidence "is a highly deferential standard of review." *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). The Supreme Court describes it as "more than a mere scintilla." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019). "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (internal quotations omitted).

### IV. DISCUSSION

**A. Plaintiff's Testimony**

Plaintiff argues the ALJ improperly rejected his testimony regarding his mental impairments.

1. The ALJ's Findings

The ALJ summarized Plaintiff's subjective limitations as follows:

> The claimant alleged on a disability report that was completed on June 10, 2019, that he suffers from **bipolar disorder**, which limits his ability to work. The claimant also stated that he was five feet eight inches tall and he weighed **365 pounds**. The claimant indicated on a function report that was completed on June 10, 2019, that his condition affected his **ability for standing, remembering, completing tasks, concentrating, and getting along with others**. The claimant further stated that his bipolar condition limited his ability to work and he had high **anxiety and PTSD**.

AR 99 (emphasis added; internal citations omitted). The ALJ found these claims less than fully credible, explaining:

> Despite those allegations, the claimant indicated on the same function report that he could **prepare his own meals on a daily basis**, which would be **inconsistent with his previous statements that he had difficulty with standing and completing tasks**. The claimant also stated that he **did not need help or reminders when taking his medication**, which was **inconsistent with his previous statements that he had difficulty with remembering, completing tasks and concentrating**. Additionally, the claimant stated that he could **use public transportation**, which would be inconsistent with his previous statements that he had **difficulty with standing, remembering, completing tasks, concentrating and getting along with others**. The claimant stated that he could go **shopping in stores for food, and he could pay bills, count change, handle a savings account and use a money order**, which would be **inconsistent with his previous statements that he had difficulty with remembering, completing tasks, concentrating, and getting along with others**. The claimant has described daily activities that are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations.
>
> * * *
>
> With regard to his activities of daily living, it was noted that he was living in a men's shelter and he **used public transportation**. He stated that he received food stamps and he could **shop and he cooked meals at the shelter**. On most days, he left the shelter and **looked for housing**. He said that **he walked around looking for places** that advertise places to rent. He said he liked to watch the Seahawks play and he enjoyed baseball. He also liked to **go fishing**. He said that **he had friends and he was in touch with his oldest sister and brother**.

AR 100-103 (emphasis added; internal citations omitted).

In addition to the inconsistencies between Plaintiff's alleged functional limitations and his admitted activities, the ALJ found the state agency psychological consultants' opinions regarding Plaintiff's functionality persuasive. AR 107. The ALJ reasoned:

> The doctors are familiar with the agency's rules and regulations and they had the opportunity to review the record. In addition, **the findings are supported with explanation of what the doctors saw in the record**. Further, the findings are **fairly consistent with the record** and support a finding of non-disability. As previously, mentioned in this decision, the **claimant was able to find an apartment and live on his own independently and he was able to get along with his neighbors**. Additionally, during a telephone psychotherapy on September 8, 2020, the **claimant reported significant improvement after starting Vraylar and tapering off Paxil**. He was able to fall and stay asleep. He **felt less depressed, less anxiety, less irritable and he was no longer having migraines or headaches**. He would like to continue with his medication without adjustment. The claimant was diagnosed with bipolar Type I with psychotic features; ADHD combined type; migraine with aura and obesity. For treatment, his dose of Benzatropine would be decreased and he was to stop taking the Paxil and continue with all other medications. **This evidence indicates that the mental limitations, as found in the residual functional capacity, are warranted.**

AR 107 (emphasis added; internal citations omitted).

2. Testimonial Evidence Standard

"The ALJ conducts a two-step analysis to assess subjective testimony where, under step one, the claimant must produce objective medical evidence of an underlying impairment or impairments that could reasonably be expected to produce some degree of symptom." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (citation and internal quotation marks omitted). "If the claimant meets this threshold and there is no affirmative evidence of malingering, the ALJ can reject the claimant's testimony about the severity of [his] symptoms only by offering specific, clear and convincing reasons for doing so." *Id*.

When assessing a claimant's credibility the ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid." *Smolen v. Chater*, 80 F.3d 1273,

1284 (9th Cir. 1996). The ALJ may also consider if a claimant's complaints are "inconsistent with clinical observations[.]" *Regennitter v. Commissioner of Social Sec. Admin.*, 166 F.3d 1294, 1297 (9th Cir. 1998).

However, affirmative evidence of symptom magnification, or malingering, relieves an ALJ from the burden of providing specific, clear, and convincing reasons for discounting a claimant's testimony. *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Berry v. Astrue*, 622 F.3d 1228, 1235 (9th Cir. 2010) (upholding finding where ALJ "pointed to affirmative evidence of malingering").

Questions of credibility are solely within the control of the ALJ. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). The Court should not "second-guess" this credibility determination. *Allen v. Heckler*, 749 F.2d 577, 580 (9th Cir. 1984). In addition, the Court may not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence. *Id*. at 579.

3. <u>Analysis</u>

Plaintiff argues the ALJ improperly rejected his alleged mental limitations by concluding they were inconsistent with his daily activities. Dkt. 16 at 10-11. Plaintiff contends the daily activities the ALJ identified as inconsistent "were all performable within [] Wingate's limitations"[1]—such as doing chores, taking the bus, shopping and paying bills—as these things can be done in piecemeal fashion with breaks, assistance, and without minimal standards inherent to a work-setting such as maintaining appropriate behavior over extended periods of time and sustaining effort throughout a workday and workweek. *Id*. at 11.

---

[1] Terilee Wingate, Ph.D. completed a psychological evaluation of Plaintiff.

Defendant responds that the ALJ properly discounted Plaintiff's testimony not only due to the inconsistencies between his alleged limitations and his activities of daily living but also due to inconsistencies with the objective medical evidence, which Plaintiff fails to address. Dkt. 19 at 2-3. Specifically, while Plaintiff claimed his mental impairments caused difficulty remembering, completing tasks, concentrating, and getting along with others, his treatment notes did not reflect significant memory impairment on examination and his concentration was within normal limits. Dkt. 19 at 3 (citing AR 821, 859, 864, 859, 864). In addition, Defendant notes that Plaintiff appeared friendly, pleasant, calm, and cooperative at his appointments. *Id*. (citing AR 758, 783, 788, 807, 821, 864, 894, 943, 949, 1015, 1063, 1089, 1102, 1124, 1209, 1702). Finally, Defendant claims the ALJ correctly determined that Plaintiff had a positive response to medical interventions for his mental-health related impairments, which included a combination of pharmaceutical therapy (Paxil, Wellbutrin, Trazadone, Alprazolam, and Vraylar) as well as psychotherapy. AR 103-105. And while it is true Plaintiff was hospitalized due to suicidal ideation following his release from prison after his second parole violation,[2] adjustments to his medication regimen resulted in reported improvement with some backsliding related to situational stressors. *Id*. (citing AR 103, 855, 864, 778, 1658, 1653, 1732).

In addition to finding the objective medical evidence did not support the degree of impairment alleged by Plaintiff, Defendant argues the ALJ also pointed to substantial evidence of inconsistencies between Plaintiff's alleged limitations and his activities of daily living. Dkt. 19 at 4 (citing AR 490-491, 493, 512-513, 515). Plaintiff's contention that his activities were

---

[2] Plaintiff served approximately eight-and-a-half years in prison from 2004 until 2012. AR 713, 856. He violated the terms of his probation twice and returned to prison for short periods, most recently serving 45 days in 2019. AR 856. Notably, Defendant insists Plaintiff's status as a felon and registered sex offender is the real reason he has difficulty finding work. *Id*. (citing AR 840, 856).

consistent with the limitations Wingate opined for Plaintiff is, according to Defendant, "immaterial" with respect to the ALJ's assessment of Plaintiff's credibility. Dkt. 19 at 5.

The Court concurs with Defendant that the ALJ pointed to clear and convincing reasons, supported by substantial evidence, to reject Plaintiff's testimony. First, the Court notes that Plaintiff "does not challenge the physical RFC" and therefore does not traverse the ALJ's rejection of his testimony with respect to his alleged physical limitations. *See*, Dkt. 16 at 10. Any objection to the ALJ's findings in this regard are therefore waived. *See*, *McKay v. Ingleson*, 558 F.3d 888, 891 n. 5 (9th Cir. 2009) ("Because this argument was not raised clearly and distinctly in the opening brief, it has been waived"). This is significant because the ALJ's rejection of Plaintiff's alleged physical limitations buttresses this Court's conclusion that the ALJ pointed to substantial evidence in discounting Plaintiff's testimony.

As Defendant correctly states, Plaintiff's argument that his activities aligned with the limitations assessed by Wingate is not the standard of review here. The question for the Court is: Did the ALJ point to clear and convincing reasons supported by substantial evidence to reject the degree of limitation Plaintiff claims to experience? The Court finds the answer is "Yes." With regard to Plaintiff's alleged mental-health related limitations, the ALJ cited numerous medical records in support of his conclusion that Plaintiff's statements were not consistent with the objective medical evidence, which did not show a significant memory impairment (AR 821, 859, 864) or abnormal concentration (AR 859, 864), and consistently described a friendly, pleasant, calm and cooperative patient (AR 100, 758, 783, 788, 807, 821, 864, 894, 943, 949, 1015, 1063, 1089, 1102, 1124, 1209, 1702). In addition, the ALJ found Plaintiff's mental-health related impairments responded well to treatment, notwithstanding some setbacks due to parole revocation and situational stressors. AR 103-105, 855, 864, 778, 1066, 1653, 1658, 1732.

Moreover, the ALJ's conclusion that Plaintiff's daily activities "are not limited to the extent one would expect" was also supported by substantial evidence, such as Plaintiff's admitted ability to prepare his own meals, handle his own medications, walk around looking for a new place to live, go fishing, take public transportation, get along with his housemates in the men's shelter, have friends, keep in touch with his siblings, go shopping in stores, handle his own money and food stamps, and pay his own bills. AR 101-103. This conclusion was further supported by the ALJ's adoption of the opinions of the state agency psychological consultants[3] who also noted that Plaintiff was able to find an apartment and live independently following his post-incarceration stay at the men's shelter. AR 107.

For all of these reasons the Court is not persuaded by Plaintiff's argument that the ALJ erred in his evaluation of Plaintiff's testimony, and instead finds substantial evidence to support the ALJ's clear and convincing reasons for rejecting it.

**B. Medical Evidence**

Plaintiff argues the ALJ erred in discrediting the opinion of Terilee Wingate, Ph.D..

1. <u>The ALJ's Findings</u>

On March 29, 2021 Terilee Wingate, Ph.D. (Wingate) completed a psychological evaluation of Plaintiff, opining that his only marked limitations were in his ability to maintain appropriate behavior in a work setting and complete a normal work day and week without interruptions from psychologically based symptoms. AR 1942-1943. In addition, Wingate opined that Plaintiff's prognosis for working again was "poor". *Id*.

---

[3] As with the ALJ's rejection of his alleged physical impairments, Plaintiff does not challenge the ALJ's adoption of the state agency psychological consultants and has therefore also waived any objection to the ALJ's adoption of their opinions. *See generally*, Dkt. 16; McKay, 558 F.3d at 891 n. 5.

The ALJ rejected Wingate's opinion as "not well supported and inconsistent with the evidence in the record." AR 108. The ALJ noted that in Wingate's prior psychological evaluation of Plaintiff from May 6, 2019 she opined that, in addition the above listed marked limitations, Plaintiff also had marked limitations in performing activities within a schedule, maintaining regular attendance, and being punctual with customary tolerances without special supervision. *Id*. (citing AR 1008, 1942). Thus, Wingate's 2021 opinion showed the basis work activity of performing activities within a schedule, etc. had improved from "marked" to "moderate". The ALJ therefore concluded that Wingate's opinion indicated Plaintiff had "shown some improvement" in his ability to perform activities within a schedule, which was inconsistent with her other findings. AR 108. Further, the ALJ concluded that the fact Plaintiff was on parole in 2019 and did not have any "incidents or problems" was evidence of Plaintiff's "good judgment", further undermining Wingate's opinion. *Id*. Finally, the ALJ noted that Wingate only saw Plaintiff twice and "never treated him for his impairments." *Id*.

### 2. Medical Evidence Standard

Under the revised regulations, ALJs "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s) …". 20 C.F.R. §§ 416.1520c(1) and 416.920c(a). Instead, ALJs must consider every medical opinion or prior administrative medical findings in the record and evaluate each opinion's persuasiveness using a list of factors listed. *See*, 20 C.F.R. §§ 416.1520(c)(a) and 416.920c(a). The two most important factors are the opinion's "supportability" and "consistency." *Id*. ALJs must explain "how [they] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in [their] . . . decision." 20 C.F.R. §§ 416.1520c(b)(2) and 416.920c(b)(2).

"Supportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant … objective medical evidence.'" *Woods v. Kijakazi*, 32 F.4th 785, 791-2 (9th Cir. 2022) (citing 20 C.F.R. § 404.1520c(c)(1)); *see also*, 20 C.F.R. § 416.920c(c)(1). "Consistency means the extent to which a medical opinion is 'consistent … with the evidence from other medical sources and nonmedical sources in the claim.'" *Id*. at 792 (citing 20 C.F.R. § 404.1520c(c)(2)); *see also*, 20 C.F.R. § 416.920c(c)(2).

3. <u>Analysis</u>

Plaintiff argues the ALJ's reasons for rejecting Wingate were not legally sufficient. Dkt. 16 at 8. First, Plaintiff argues that the fact Wingate only saw plaintiff twice and did not treat him has no "bearing on her opinions" under the current medical guidelines. *Id*. (20 CFR §§ 404.1520c(c), 416.920(c)).

Next, Plaintiff insists any "improvement" Wingate assessed in Plaintiff's ability to maintain a schedule without special supervision was "so minimal as to constitute corroboration and a good reason to adopt the remaining marked limitations." Dkt. 16 at 8. Most likely Wingate's assessment changed because Wingate did not administer the BDI-II evaluation during Plaintiff's second evaluation, according to Plaintiff. *Id*. at 8-9. In any event, Plaintiff argues that Wingate's "findings and limitations remained generally consistent over 2 years" notwithstanding his medication and therapy treatments during that time, leading Wingate to conclude that Plaintiff's "worsening medical issues seem to exacerbate his depressed mood and anxiety" and that his "[p]rognosis for work is poor". *Id*. at 9 (citing AR 1942).

Third, Plaintiff challenges the logic behind the ALJ's finding that Plaintiff exhibited "good judgment" contradicting Wingate's opinion, arguing the ALJ "the ALJ made an unreasonable jump to go from no incidents on parole to 'good judgment' contradicting [] Wingate's limitations." Dkt. 16 at 9. Plaintiff argues there is "no reasonable connection between

following parole protocols, the punishment for which would be reincarceration, and sustaining regular and continuing work." *Id*.

Finally, Plaintiff points to test results from a January 28, 2019 Montreal Cognitive Evaluation of Plaintiff pursuant to his requested referral for a neurological evaluation as substantial evidence consistent with Wingate's opinion. Dkt. 16 at 10 (citing AR 777-778).

Defendant responds that the ALJ was correct to reject Wingate's opinion as inconsistently stating that Plaintiff's mental health had not improved, but his limitations did improve from "marked to just moderate." Dkt. 19 at 6-7. According to Defendant, this one reason was sufficient for the Court to uphold the ALJ's rejection of Wingate's opinion.

The Court finds the ALJ's determination that Wingate's 2021 opinion is inconsistent with her 2019 opinion was not based upon substantial evidence. The ALJ failed to set forth his reasoning behind this finding with enough detail to permit the Court to meaningfully review it. *See e.g.*, *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) ("the agency [must] set forth the reasoning behind its decisions in a way that allows for meaningful review"). For instance, the ALJ states Plaintiff had "shown some improvement" in his ability to perform activities within a schedule, but the ALJ does not explain how this fact is inconsistent with Wingate's other findings. AR 108. The ALJ's attribution of "good judgment" to Plaintiff for not violating his parole during the period Wingate assessed him suffers from the same infirmity—how does Plaintiff not violating his parole for a third time undermine Wingate's opinion? Finally, as Plaintiff contends, the fact Wingate only saw Plaintiff twice and "never treated him for his impairments" is not of primary import under the revised regulations, and in any event the ALJ fails to explain how this fact undermined Wingate's opinion but not the opinions of the state agency psychological evaluators who similarly did not treat Plaintiff.

In sum, the Court finds the ALJ failed to point to substantial evidence to reject Wingate's opinion and must therefore revaluate Wingate's opinion on remand, and reassess the sequential evaluation accordingly.

## V. CONCLUSION

For the foregoing reasons, the Court REVERSES and REMANDS the decision pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this Order.

Dated this 20th day of July, 2023.

David W. Christel
United States Magistrate Judge